**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KEVIN T. KAVANAUGH,

                              Plaintiff,

         - v -                                                    Civ. No. 8:14-CV-1244
                                                                            (DJS)

VILLAGE OF GREEN ISLAND, *et al.*,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

THE KINDLON LAW FIRM, PLLC          GENNARO D. CALABRESE, ESQ.
Attorneys for Plaintiff
52 James Street, 5th Floor
Albany, New York 12207

COOK, NETTER, LAW FIRM              ERIC M. KURTZ, ESQ.
Attorneys for Defendants Green Island and
Johnson and Rice
P.O. Box 3939
85 Main Street
Kingston, New York 12402

THE REHFUSS LAW FIRM, P.C.          STEPHEN J. REHFUSS, ESQ.
Attorneys for Defendants City of Albany
and Scalise
40 British American Boulevard
Latham, New York 12110

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Kevin Kavanaugh brings this action against the Defendants pursuant to 42 U.S.C. § 1983 and New York state law, alleging claims arising out of his arrest on July 21, 2013.  Dkt. No. 103, Second Am. Compl.  The case has now been resolved against a large number of the original Defendants.  Dkt. Nos. 200, 209, & 211.  The Defendants that remain include the Village of Green Island, and its Police Officers Paul Johnson and William Rice ("The Green Island Defendants"), as well as the City of Albany and its Police Officer Anthony Scalise ("The City of Albany Defendants").  Presently before the Court is the City of Albany Defendants' Motion for Partial Summary Judgment and the Green Island Defendants' Motion for Summary Judgment.  Dkt. Nos. 183 & 188.  For the reasons that follow, the City of Albany Defendants' Motion is **granted**, and the Green Island Defendants' Motion is **granted in part and denied in part**.

### II. Facts

On July 21, 2003 Plaintiff Kevin Kavanaugh was smoking marijuana while operating his girlfriend's Honda Civic in the Village of Green Island. Dkt. No. 188-5, Kavanaugh 50-h, at pp. 13-16.  The Village of Green Island Police attempted to execute a traffic stop, but Plaintiff refused to pull over because he did not have a license and had drugs in the car, and instead led the police on a high-speed chase down Interstate 787, reaching speeds in excess of 90 mph.  *Id.* at pp. 16-17.  Engaged in the pursuit were two Officers from Green Island, Officers Johnson and Rice, and an Officer from the Watervliet Police, Anthony Harbour.

Dkt. No. 188-8, Officer Johnson Dep., at pp. 14-15; Dkt No. 188-9, Officer Rice Dep., at pp. 16-18; Dkt. No. 188-11, Officer Harbour Dep., at p. 8. Plaintiff went West on Interstate 90, and then turned off on the Henry Johnson Boulevard/Arbor Hill exit. Kavanaugh 50-h, at p. 21. When Plaintiff reached the Clinton Avenue intersection, he claims he encountered two police cars from the City of Albany impeding his route,[1] and, having second thoughts about the actions that he had taken to that point, he brought his vehicle to a complete stop, thus ending the chase. *Id.* at pp. 21-22. While sitting in his vehicle, Plaintiff then ingested the drug ketamine, commonly referred to as "Special K." *Id.* at pp. 14 & 22.

It is at this point that the version of events differ significantly between those alleged by Plaintiff and the moving Defendants. Plaintiff maintains that Officer Johnson of the Green Island Police approached his vehicle, and that Plaintiff got out of the vehicle and indicated to Officer Johnson that he was not resisting. *Id.* at pp. 25-26. Despite that, Plaintiff claims that Officer Johnson took hold of him and slammed him to the ground. *Id.* Other Officers then joined in, and Plaintiff claims that he was hit with a nightstick; that Officers had their knees on his back and neck; that other Officers were standing on the back of his legs; all the while a State Trooper was kicking him in the side of the head. *Id.* Other Officers, including the Albany police, allegedly observed this occurring but failed to intervene. *Id.* at pp. 25-28. Plaintiff alleges that during this time he told the Officers to stop

---

[1] Trooper Eric Johnson testified that he was working with Albany Police on that shift as part of the joint policing program known as "Operation Impact" and he and Albany Police Officer Anthony Scalise were in the same vehicle near the Clinton Avenue intersection at the time the chase came to an end. Dkt. No. 188-7, Trooper Johnson Dep. at pp. 9-10. Trooper Johnson notes that Plaintiff was stopped by civilian traffic, and not a police road block, and that after Plaintiff came to a stop he, Trooper Johnson, was the first officer to approach Plaintiff's vehicle and have physical contact with him. *Id.* at pp. 11-14.

hitting him.  *Id.* at p. 35.

Next, Plaintiff alleges that he was handcuffed, picked up by Officers and was walked by Officer Johnson over to a Village of Green Island police car where his head was repeatedly slammed into the roof of that car.  *Id.* at pp. 31-32.  Plaintiff then claims, that while still handcuffed, Officer Johnson "ripped" his right shoe off his foot, and in doing so violently twisted his ankle causing him to yell out.  *Id.* at pp. 30-31; Dkt. No. 203-3, Kavanaugh Aff'd,  at ¶¶ 3-5.  Plaintiff had numerous pins in his right ankle as a result of a 2012 fall from a tree.  Kavanaugh 50-h at pp. 32-33.  As a result of this event, Plaintiff maintains that all portions of his body hurt and it felt like he had been "hit by a Mack truck." *Id.* at p. 37.

Plaintiff was then transported to the Green Island Police Station, where he asked for medical attention.  *Id.*  According to Officer Johnson, Plaintiff complained of leg pain shortly after the incident, and upon viewing the leg "[i]t just looked like a dead leg, grayish white, like a wax museum leg or something."  Officer Johnson Dep. at p. 32.  Within twenty minutes he was taken to the Samaritan Hospital and was seen.  Kavanaugh 50-h, pp. 37-38. Ultimately Plaintiff maintains that as a result of this incident the circulation to his right foot was severely impacted and, seven days after the event, his right leg had to be amputated from the knee down, at Albany Medical Center.  *Id.* at pp. 41-42; Kavanaugh Aff'd at ¶¶ 9-11; Dkt No. 203-2, pp. 14-17.

The Green Island Defendants, on the other hand, assert that it was State Trooper Johnson who pulled Plaintiff from his vehicle and, because Plaintiff was not compliant,

Trooper Johnson then took Plaintiff to the ground using an arm bar technique. Trooper Johnson Dep. at pp. 15-17. Defendants claim that while Plaintiff was on the ground he was still resisting arrest by refusing to give up his arm, or by pulling away from the Trooper, and it was only at this point that Officer Johnson began to assist the Trooper in subduing Plaintiff. Officer Johnson Dep. at p. 21. During the struggle Trooper Johnson struck Plaintiff two to four times in the back to gain compliance. *Id.*; Trooper Johnson Dep. at p. 25. At that point in time Plaintiff was handcuffed and put in a patrol car by Officer Johnson. Officer Johnson Dep. at p. 23. Officer Johnson also took off Plaintiff's shoe, but denies using any excessive force in doing so. *Id.* at p. 26 ("they came off easy."). According to Officer Johnson, no other Police Officer struck, punched or kicked Plaintiff during this time, except as specifically stated above. *Id.* at pp. 23-26.

While Officer Rice acknowledges being involved in the high-speed pursuit with Plaintiff, he maintains that he was late to arrive at the scene of the arrest because he stopped to pick up a bag of drugs that the Plaintiff had thrown out his car window during the course of the chase. Officer Rice Dep. at p. 20. As a result, Officer Rice testified that when he arrived at the scene the Plaintiff had already been subdued and was leaning against the car with Officer Johnson removing his shoes. *Id.* at pp. 23-25. Thus, he maintains he did not use any excessive force against Plaintiff, nor was he present when such force was used. *Id.*

Finally, the Defendants maintain that Plaintiff did not sustain any acute injury, or aggravation of a previous injury, to his right foot or ankle on the date of the incident. Defs.' SMF at ¶ 35.

### III.  The Defendants' Motions

On behalf of the Village of Green Island and its two officers, Johnson and Rice, Green Island counsel asserts several points in his Motion:  (1) that the Officers were entitled to use force to effectuate the lawful arrest of Plaintiff, and that the admissible evidence establishes that force used was reasonable as a matter of law and Plaintiff's claims to the contrary are contradictory and not credible; (2) that reasonable force does not become excessive simply because it aggravates a pre-existing condition that was unknown to the officers; (3) that there is no basis for a claim that the Police Officers failed to intervene to stop excessive force; (4) that, in any event, the Police Officers are entitled to qualified immunity; (5) that Plaintiff's substantive due process claim is duplicative of his excessive force claim and must be dismissed; (6) that Plaintiff has failed to establish a *Monell* claim regarding the Defendant Village's alleged failure to train officers to intervene to stop excessive force by fellow officers; (7) that the state law claims of assault, battery, and intentional infliction of emotional distress are barred by the one-year statue limitations; (8) that any claims against Green Island alleging vicarious responsibility should be dismissed; (9) that a negligence claim cannot be properly asserted because no such claim was included in the Notice of Claim, because there has been no showing of a special duty, and because a negligence claim cannot coexist with an excessive use of force claim; (10) that the state law claim for negligent infliction of emotional distress is duplicative of Plaintiff's other claims; and (11) that any punitive damage claim against a municipality cannot stand.

The City of Albany's Motion is more narrowly tailored. The Albany Defendants

maintain that no *Monell* claim has been established against the City for its alleged failure to train its officers to intervene; that the claim for punitive damages against the City of Albany is improper; and that the Plaintiff's substantive due process claim should be dismissed because it merely replicates his Fourth Amendment claim.

Plaintiff opposes both Motions. Dkt. Nos. 193 & 203. However, Plaintiff's counsel does concede that Plaintiff's Twelfth Cause of Action, a § 1983 claim premised upon alleged violations of the Substantive Due Process Clause, is properly dismissed as duplicative of his Fourth Amendment claim. Dkt. No. 203-1, Pl's Mem. of Law at p. 20. Plaintiff also does not oppose dismissal of his Eighth Cause of Action, alleging negligence against the Village of Green Island, or his Eleventh Cause of Action, alleging negligent infliction of emotional distress. *Id*. at pp. 17 & 20. Finally, Plaintiff concedes that an award of punitive damages against a municipality is not allowed, and clarifies that his claim for punitive damages is only against the individual Police Officers. *Id.* at p. 20.

In light of the foregoing, the only issues left to be decided on the present Motions are whether a §1983 claim premised upon *Monell* liability can proceed against the Village and the City; whether questions of fact exist which would require a trial concerning Plaintiff's allegations of excessive force and failure to intervene, and whether the Officers involved are entitled to qualified immunity; and whether Plaintiff's state law claims can proceed, or are barred on statute of limitations grounds or because of some other impediment.

## IV.  Discussion

### A.  Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should

be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and [] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).

Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Excessive Force, Failure to Intervene, and Qualified Immunity

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d. Cir. 2010); *see also Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Utilizing the "perspective of a reasonable officer on the scene," *Graham v. Connor*, 490 U.S. at 396, the court must consider a multitude of factors, including: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d at 96 (citing *Graham v. Connor*, 490 U.S. at 396). "Application of physical force is excessive when it is more than is necessary under the circumstances." *Brown v. City of New York*, 2013 WL 491926, at *10 (S.D.N.Y. Feb. 8, 2013) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003)).

"Given the need for such a fact-intensive inquiry, 'granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively reasonable.'" *Hill v. City of New York*, 2005 WL 3591719, at *3 (E.D.N.Y. Dec. 30, 2005) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)); *see also Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 235 (E.D.N.Y. 2015) ("Because objective reasonableness is extremely fact-specific, summary judgment on the issue is often inappropriate.").

The evidence presented to the Court on this Motion does not warrant granting summary judgment to the Green Island Defendants. As noted above, the Court's role in this

regard is not to compare and weigh the evidence, and to conclude that the Defendant's version is more likely to be correct.  The Court's proper role ends at the point when it concludes that there are material questions of fact as to whether any of the moving Defendants used more force than necessary in effectuating the arrest of Plaintiff, or failed to intervene in the face of excessive force.   That point has now been reached.  Plaintiff clearly asserts that Officer Johnson used force far in excess of what was necessary, especially in light of Plaintiff's claim that he was offering no resistance. A reasonable jury could well conclude that the acts of slamming Plaintiff to the ground, punching and hitting him, ramming his head into the roof of a police car, and violently twisting his ankle in the process of removing sneakers, if true, was conduct that was unreasonable, excessive, and accordingly, unconstitutional.

Recognizing that the version of events posited by Plaintiff would generally overcome a motion for summary judgement, the Green Island Defendants nevertheless argue that the Court can disregard Plaintiff's claim under the doctrine annunciated by the Second Circuit in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).  As recently summarized by Senior United States Judge Lawrence Kahn:

> . . . *Jeffreys* held that in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, a district court may weigh the credibility of the plaintiff's version of events in determining whether to grant summary judgment. 426 F.3d at 554. If the plaintiff's account is so contradictory and incomplete that no reasonable juror would credit it, and if the moving party ... meet[s] the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor, then the court may enter summary judgment in favor of the defendant. *Id.* at 554–55. As the Second

> Circuit later noted, [t]he facts in *Jeffreys*... were extreme. *Matheson v. Kitchen*, 515 Fed.Appx. 21, 23 (2d Cir. 2013). The *Jeffreys* plaintiff offered, for the first time in litigation, a version of events that directly contradicted the account he had previously and consistently provided, and that was inconsistent with all other evidence in the record.

*Bryant v. Bouvia*,  2017 WL 383356, at *1 (N.D.N.Y. Jan. 27, 2017)(internal quotations omitted).

*Jeffreys* is not controlling on the present Motion for several reasons.  First, Plaintiff has not presented wholly inconsistent positions.  Rather, he has consistently claimed, at his 50-h examination, during his deposition, and in connection with his present submissions, that he was the victim of excessive force during his arrest by certain police officers, while other police officers failed to intervene.  *See generally* Am. Compl.; Kavanaugh 50-h; Kavanaugh Dep.; Kavanaugh Aff'd.  While Plaintiff's most recent Affidavit may add more facts, or amplify his prior claim, it does not contradict it.  This is fundamentally different than the plaintiff in *Jeffreys*, who claimed on three prior occasions that he jumped out the window causing his injuries, and only after a motion for summary judgment was filed did he change that version of events to claim that the police officers threw him out the window.  *Jeffreys v. City of New York*, 426 F.3d at 552.  Second, the plaintiff in *Jeffreys* was unable to identify any of the individuals who allegedly attacked him, *id.*, but here Mr. Kavanaugh has consistently identified the officers he claims assaulted him, or who allegedly failed to intervene.  Finally, unlike *Jeffreys*, the medical records submitted to the Court are not wholly inconsistent with Plaintiff's claim, as adequately summarized by Dr. Eisenbaum in his September 25, 2016 letter to Plaintiff's counsel.  Dkt. No. 203-2, at pp. 16-17.

The Green Island Defendants' strenuous arguments that Plaintiff's testimony is contradicted by the testimony of three separate Police Officers who maintain that any use of force was appropriate; that Plaintiff may have been impaired by drugs; and that the Plaintiff only sustained a scratch from the pavement (the Defendants maintain that the amputation of Plaintiff's right leg seven days after the incident was likely caused by events unrelated to the arrest),[2] Green Island Mem. of Law at pp. 9-10, are all certainly appropriate matters for cross-examination and summation before a jury, but they do not warrant granting summary judgment.

Officer Rice maintains that he is entitled to summary judgment because he was not present at the time when the Plaintiff was taken to the ground, and only arrived after the fact, and further that he had no physical contact with Plaintiff.  Dkt. No. 188-2, Green Island Mem. of Law at p. 6; Rice Dep. at pp. 20-21, 25.  As related by Officer Rice in his deposition testimony, while he was involved in the high-speed pursuit near its end, he witnessed the Plaintiff toss a black bag out of his vehicle.  Rice Dep. at p. 18.  He quickly stopped and picked it up, and then "proceeded to catch up to the pursuit."[3]  *Id.* at 20.  Plaintiff counters

---

[2]  In deciding the present Motion it is not necessary for the Court to resolve the complicated causation issues raised by counsel for the Green Island Defendants.  By determining that a question of fact exists on the issue of excessive force, the Court also leaves to the jury to determine, if they find liability, what the resultant damages should be based upon the testimony of the witnesses; any competent medical proof; and the principles of law which authorize a plaintiff to recover for all the foreseeable consequences of a constitutional violation.  *See Mauer v. United States*, 668 F.2d 98, 99-100 (2d Cir. 1981)("[i]t is a settled principle of tort law that when a defendant's wrongful conduct causes injury, he is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe than they would have been for a normal victim.").

[3]  The Court notes that it would have taken some time for Officer Rice to recover the bag before he resumed pursuit of Plaintiff.  However, Plaintiff also testified that after he pulled to a stop, he waited a minute or two before he got out of the car and was then allegedly assaulted.  Kavanaugh 50-h, at p. 24

that while he does not know their names, he does know that there were multiple Green Island Police Officers at the scene of his arrest, Dkt. No. 188-6, Kavanaugh Dep. at p. 41 ("I know there was Green Island officers"); Kavanaugh 50-h at p. 47 ("there was more than one, yes"), and the subsequent evidence shows that the only two Green Island Officers involved in this incident were Officers Johnson and Rice.  Officer Johnson Dep. at pp. 20-21; Officer Rice Dep. at p. 24.  Trooper Eric Johnson also recalls seeing Officer Rice at the scene at the point when Plaintiff was handcuffed and in custody.  Trooper Johnson Dep. at pp. 17-18 ("And I know Officer William Rice was there").   Officer Rice himself acknowledges that when he arrived the Plaintiff was in handcuffs leaning up against the car, and he witnessed Officer Johnson remove both of Plaintiff's sneakers.  Officer Rice Dep., at pp. 20-21.  This is significant because an important part of Plaintiff's claim is  that he was also assaulted *after* his handcuffing and while at the police car, when Officers slammed his head into the roof of the car, and when Officer Johnson forcibly ripped his sneakers off his feet.  Second Am. Compl. at ¶¶ 31-36.

The fact that Officer Rice claims he had no physical contact with the Plaintiff, even if true, is not determinative.  A police officer who, though not participating, is present while an assault by fellow officers upon an detainee occurs may nonetheless bear responsibility for any resulting constitutional deprivation. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").  In such circumstances, liability depends upon

*-14-*

whether the officer in question "(1) possessed actual knowledge of the use by another officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." *Lewis v. Mollette*, 752 F. Supp. 2d 233, 244 (N.D.N.Y. 2010) (citing *Cicio v. Lamora*, 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010)). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson v. Branen*, 17 F. 3d at 557. Here, the competing versions of events must be resolved by the trier of fact and prevent the issuance of summary judgment on this claim.

Finally, the Defendant Green Island Officers are not entitled to qualified immunity at this stage of the proceeding. *See Thomas v. Roach*, 165 F. 3d 137, 143 (2d Cir. 1999) ("summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness.").

## C. *Monell* Liability

Plaintiff alleges that the City of Albany and the Village of Green Island did not properly train its Officers on their obligation to intervene when faced with excessive force being used by fellow law enforcement. Second Am. Compl. at ¶¶ 106-124; Pl.'s Mem. of Law, at pp. 14-16. "[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy" only if the failure to train "amount[s] to 'deliberate indifference to the

*-15-*

rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is a "stringent standard of fault," which requires "'proof that a municipal actor disregarded a known or obvious consequence'" of the particular failure in training. *Id.* (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62. (quoting *Bd. of Cty. Comm'rs of Bryan Cty*, 520 U.S. at 409). The Supreme Court has cautioned that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

The deposition testimony of the Police Officers in question belies Plaintiff's contention that they were not trained with respect to their obligations regarding the use of force. For example, City of Albany Police Officer Scalise testified that he did receive training regarding the proper use of force both in the police academy as well as in yearly in-service trainings. Dkt. No. 188-10, Scalise Dep., at p. 9. Officer Scalise also received training regarding the prevention of unnecessary force by other officers, although he was not sure if he received written materials on that issue. *Id.* at p. 11. The Scalise deposition testimony included the following question and answer:

> Q. Can you state your understanding of what the policy is of the Albany Police Department, regarding the prevention of unnecessary force by another officer?
>
> A. Pretty much it's if I observe an officer using unnecessary force, I'd step in. I

*-16-*

wouldn't allow it to happen in my presence.
*Id.* at pp. 11-12.

Similarly, Green Island Police Officer William Rice testified that he received training concerning use of force at the State Police Academy, as well as during yearly updates during his police career, and that Green Island does have a policy concerning use of force. Officer Rice Dep. at pp. 10, 42-44. With regard to prevention or intervention of misconduct by other Officers, Officer Rice felt that it was covered under the use of force policy and under the general obligation of the police to stop crimes that occur within their presence. As he stated: "use of force is always a hot topic within the agency, the Sheriff's office agency, so I'm sure we have discussed the proper steps of notifying the supervisors and/or stopping it if – – obviously if you feel that it's a violation of law, then you have to step in." *Id.* at pp. 44-45. The Green Island Use of Force Policy specifically provides that "the force used must be the minimum amount necessary to achieve lawful objectives." Dkt. No. 203-2, Ex. 7, p. 1. Moreover, the Policy specifically refers to New York Penal Law Article 35, which only provides a justification for conduct which is required or authorized by law, or performed by a public servant in the reasonable exercise of his official powers. *Id.* Accordingly, force used by police officers in excess of what is authorized by §35.05 of the Penal Law is, in itself, criminal conduct. The policy specifically directs officers to adhere to the guidelines in Article 35. *Id.*

This testimony amply carries the moving Defendants' burden to establish that both municipalities did in fact provide training to their officers on the use of force.

In the present case, Plaintiff's claim is not premised upon, or supported by, any expert analysis of the actual training received by the Village or City Officers in question, or by an established history of misconduct, but rather upon the single assertion that the Defendants cannot produce a particular written policy that specifically deals with the issue of intervention in the face of excessive force. As stated by Plaintiff's counsel:

> The record suggests that Defendant City of Albany does not train its officers (or, in the alternative, the training is deficient) regarding the duty to intervene to protect against excessive force. Failure to train can be discerned from Defendant City of Albany's position that documents containing directives and or policies . . . regarding prevention of unreasonable force do not exist. It is submitted that the lack of a written policy is proof that the officers are not properly trained.

Dkt. No. 193-1, Pl.'s Mem. of Law, at pp 2-3.  Regarding the Village of Green Island, Plaintiff's counsel similarly asserts that "[f]ailure to train can be discerned from Defendant Village of Green Island's position that documents containing directives and/or policies (and, thus, training materials) regarding the prevention of unreasonable force do not exist.  Pl.'s Mem. of Law at p. 14.

Plaintiff's claim that the lack of a written policy is proof of a failure to train is inconsistent with *Connick's* statement that "failure-to-train liability is concerned with the substance of the training, not the particular instructional format." *Connick v. Thompson*, 563 U.S. at 68.  The absence of a written policy, even if true, is thus not dispositive of a failure to train. *Hines v. City of Albany*, 2011 WL 2620381, at *13 n.11 (N.D.N.Y. 2011).

Upon review of the entire record submitted in opposition to these Motions, there is no evidence to support Plaintiff's failure-to-train claim against either the Village of Green

*-18-*

Island or the City of Albany.  Providing evidentiary proof of a deficient training program, and showing how that deficiency can be said to have caused a constitutional violation, is not only a basic precept of opposing Motions such as these, but it also serves to ensure that this mode of liability is not merely a proxy for a theory of respondeat superior liability, a theory not allowed in a § 1983 claim.  *Amnesty Am. v. Town of West Hartford*, 361 F. 3d 113, 130-31 (2d Cir. 2004).  Here, Plaintiff's allegation that the City or the Village failed to train its officers is entirely conclusory and thus, subject to dismissal.  *Id.*; *Ayuso v. Amerosa*, 2008 WL 141862 (N.D.N.Y. Jan.11, 2008).

### D.  The State Law Claims

The Green Island Defendants' Motion for Summary Judgment on Plaintiff's assault, battery, and intentional infliction of emotional distress claims based upon statute of limitations grounds, is wholly misplaced. Those claims are governed, not by a one-year statute limitations as Defendants claim, but by a year and ninety day time bar, and were therefore timely interposed, as already found by the District Court in its decision on December 30, 2016. *See* Dkt. No. 176, at p. 8.   Green Island's related argument that the claim of vicarious liability against the Village should likewise be dismissed as the underlying claims are stale, is likewise rejected.

In addition, the Green Island Defendants' argument that the state law negligence claim should be dismissed because it contradicts Plaintiff's assault and battery claims was previously considered by Judge Sannes in her December 30, 2016 Memorandum-Decision and Order, and was not accepted.  Dkt. No. 176 at p. 13 ("Plaintiff may proceed with his

*-19-*

negligence claim while also alleging excessive force."). This Court is in agreement with the reasoning espoused by Judge Sannes, and therefore adopts it.

The Green Island Defendants only sought to dismiss the state law claim for intentional infliction of emotional distress ("IIED") upon statute of limitations grounds. While that argument has not proven to be meritorious, the Court's review of the Plaintiff's IIED claim raised issues concerning its validity. In particular, a claim for intentional infliction of emotional distress is generally unavailable where other traditional tort remedies apply. *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 44 (N.D.N.Y. 2000); *Hansel v. Sheridan*, 991 F. Supp. 69, 75 (N.D.N.Y. 1998). Pursuant to FED. R. CIV. P. 56(f), the Court placed counsel on notice with regard to this issue and gave them an opportunity to address it at oral argument. That discussion confirmed that all of the conduct complained of by the Plaintiff regarding the Officers, and all the resultant damage, is covered by Plaintiff's claim for assault and battery. Accordingly, as the Plaintiff has not alleged an element of an intentional infliction of emotional distress claim that is different, or in addition, to what is recoverable under the traditional torts alleged, the IIED claim must be dismissed. Plaintiff consents to dismissal of this claim.

## V. Conclusion

**WHEREFORE**, it is hereby

**ORDERED**, that Defendant City of Albany's Motion for Partial Summary Judgment (Dkt. No. 183) is **GRANTED**; and it is further

**ORDERED**, that the Defendant Green Island's Motion for Summary Judgment (Dkt.

No. 188) is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED**, that Plaintiff's claim under 42 U.S.C. §1983 alleging a Substantive Due Process violation, the Twelfth Cause of Action, is **DISMISSED**; and is further

**ORDERED**, that Plaintiff's claims under 42 U.S.C. §1983 against the City of Albany and the Village of Green Island, alleging *Monell* liability, are **DISMISSED**; and it is further

**ORDERED**, the Plaintiff's claim for intentional infliction of emotional distress against all Defendants, as asserted in his Fourth Cause of Action, and as a portion of his Fifth Cause of Action, is hereby **DISMISSED** *sua sponte* by the Court; and it is further

**ORDERED**, that Plaintiff's claim against the Village of Green Island for negligent training, hiring, and supervision, the Eighth Cause of Action, is **DISMISSED**; and is further

**ORDERED**, that Plaintiff's claim for negligent infliction of emotional distress against the Village of Green Island, the Eleventh Cause of Action, is **DISMISSED**; and is further

**ORDERED**, that Defendants' Motions to dismiss the punitive damage claims against the Village and the City are **GRANTED**, as no such claim is, or could be, contained in the Second Amended Complaint; and it is further

**ORDERED**, that Defendants' Johnson and Rice's Motion for Summary Judgment dismissing the Plaintiff's claim under 42 U.S.C. § 1983 for excessive force, or in the alternative, granting them qualified immunity, is **DENIED**; and it is further

**ORDERED**, that the Green Island Defendants' Motion to dismiss the Plaintiff's state law assault and battery claims on the grounds that they are barred by the statute of limitations is **DENIED**; and it is further

**ORDERED**, that the claims that remain against Officers Johnson and Rice are claims under 42 U.S.C. § 1983 for excessive force and/or failure to intervene; and state law claims for assault, battery, negligence, and failure to intervene; and it is further

**ORDERED**, that the claim that remains against Officer Scalise is a section 1983 claim for failure to intervene; and it is further

**ORDERED**, that the claims that remain against the Village of Greene Island are state law claims for vicarious liability; and is further

**ORDERED**, that no claims against the City of Albany remain and therefore the City of Albany is **DISMISSED** as a Defendant.

**SO ORDERED**.

Date:    February 22, 2018
         Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

*-22-*